IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA PIPE RECYCLING, INC.<br><br>   Plaintiff,<br><br>   vs.<br><br>SOUTHWEST HOLDINGS, INC., et al,<br><br>   Defendants.<br>_____/ | CASE NO. CV F 08-0236 LJO SMS<br><br>**ORDER ON DEFENDANT ROBERT INGRUM'S MOTION TO DISMISS**<br>(Doc. 48.) |

**INTRODUCTION**

Defendant Robert P. Ingrum ("Mr. Ingrum") seeks dismissal of plaintiff California Pipe Recycling, Inc.'s ("Cal Pipe's") 28 U.S.C. § 1335 ("section 1335") interpleader claim on grounds that this Court lacks subject matter jurisdiction in the absence of diversity among stake claimants.[1] Mr. Ingrum further seeks dismissal of Cal Pipe's declaratory relief and F.R.Civ.P. 22 interpleader claims on grounds that this Court lacks personal jurisdiction over Mr. Ingrum. Cal Pipe responds that this Court has subject matter jurisdiction over the interpleader stake and "all disputes relevant to it." This Court considered Mr. Ingrum's F.R.Civ.P. 12(b)(1) and F.R.Civ.P. 12(b)(2) motion to dismiss on the record and VACATES the October 29, 2008 hearing, pursuant to Local Rule 78-230(h). For the reasons discussed below, this Court DISMISSES this action against Mr. Ingrum in the absence of grounds to

---

[1] Cal Pipe has interplead funds to this Court for its purchase of conveyor equipment which will be addressed below.

1

invoke subject matter and personal jurisdiction for Cal Pipe's claims against him.

## BACKGROUND

### The Parties, Their Litigation And Transfer Of Conveyor Equipment

Cal Pipe is a California corporation located in Bakersfield. Mr. Ingrum is a Texas resident and claims "no type of meaningful contact with the state of California."

Defendant Joseph Briers ("Mr. Briers") is president and sole shareholder of defendant Southwest Pipe Services, Inc. ("Southwest Pipe"), a Texas corporation located in Brazoria County, Texas. Mr. Briers resides in Fort Bend County, Texas. Defendant S.W. Pipe Holdings, Inc. ("S.W. Pipe Holdings") is a Texas corporation which conducts business in Texas. Mr. Briers appears to be the president, secretary and sole shareholder of S.W. Pipe Holdings.[2]

Mr. Briers and Raymond Briers, Jr. ("Ray Briers") are brothers and were co-owners of defendant Briers Pipe Services Corporation ("Briers Pipe"), a Texas corporation.[3] Briers Pipe conducted pipe cleaning and brokering and leased land and buildings for its business ("Hooper Road Property") from Raymond Briers, Sr. ("Ray Sr."), the father of Mr. Briers and Ray Briers. Mr. Briers and Ray Briers started to disagree over Briers Pipe in late 2002 or early 2003, and Briers Pipe ceased operations at the Hooper Road Property in mid-March 2003. Around that same time, Mr. Briers began to operate as Southwest Pipe at the Hooper Road Property and apparently used the same employees, equipment and other assets as Briers Pipe had used. In August 2003, Southwest Pipe was incorporated. Southwest Pipe contends that it conducted its business separate from Briers Pipe at the Hooper Road Property and that Southwest Pipe and Briers Pipe never operated together.

In September 2003, an apparent disagreement between Ray Sr. and Mr. Briers resulted in Mr. Briers' ejection from the Hooper Road Property and T&R Pipe Services, Inc.'s ("T&R Pipe's") (an entity associated with Ray Briers) lease of the Hooper Road Property to operate a business similar to Briers Pipe but with more emphasis on pipe brokering.

Mr. Briers instituted a Harris County, Texas action entitled *Joseph Briers v. Raymond Briers,*

---

[2] Mr. Briers, Southwest Pipe and S.W. Pipe Holdings will be referred to collectively as the "Briers defendants."

[3] At Cal Pipe's request, the clerk has entered default against Briers Pipe in this action.

2

*Sr, et al.* ("*Briers v. Briers, Sr.*") against Ray Sr. and Ray Sr.'s company, Billco Construction and Pipe Coating, Inc. ("Billco"). The litigation quickly resolved and culminated with a settlement agreement among Mr. Briers, Ray Briers, Ray Sr., Billco and Southwest Pipe to divide assets, many of which appear to have been Briers Pipe's assets. Ray Briers, Ray Sr. and Briers Pipe executed a quit claim in favor of Mr. Briers for scrap pipe and conveyor equipment subsequently transferred to Cal Pipe and at issue in this action. Although identified in the settlement agreement, Briers Pipe was neither a party nor signatory to it. Briers Pipe received nothing for the transfer of assets that may have belonged to it, including the conveyor equipment. Mr. Ingrum contends that Briers Pipe and other defendants in this action fraudulently transferred Briers Pipe's assets, including the conveyor equipment, during October 2002 to September 2003. Southwest Pipe contends that at all times, the conveyor equipment "was the property of S.W. Pipe Holdings, Inc."

Mr. Ingrum instituted a Uvalde County, Texas action against Briers Pipe regarding a defaulted hunting license. In November 2003, a default judgment was entered against Briers Pipe only after the conveyor equipment at issue here was transferred to Mr. Briers/S.W. Pipe Holdings[4] as part of the *Briers v. Briers, Sr.* settlement.

Defendant Robbye Waldon ("Mr. Waldon") is a Texas resident and trustee of Mr. Briers' discharged Chapter 7 bankruptcy. Cal Pipe appears to claim that Mr. Briers did not disclose in his bankruptcy the conveyor equipment at issue here and that the conveyor equipment was potentially part of the bankruptcy estate.

### Mr. Briers' Return Of Cal Pipe Stock

In 2005, Mr. Briers became a quarter shareholder of Cal Pipe and agreed to relocate the conveyor equipment at issue here from Houston to California. After shareholder discord, Cal Pipe and Mr. Briers entered into a March 27, 2007 agreement entitled "Majority Consent to Action by Directors and Shareholders Without a Meeting" ("consent") by which Mr. Briers resigned as a Cal Pipe officer and director, sold back his Cal Pipe voting shares, and released any interest in Cal Pipe. Pursuant to the consent, Mr. Briers/S.W. Pipe Holdings sold to Cal Pipe for $187,500 the conveyor equipment which

---

[4] The parties are unclear whether the conveyor equipment was transferred to Mr. Briers, S.W. Pipe Holdings or both of them.

has been modified and incorporated as a component of Cal Pipe's pipe cleaning machine. Cal Pipe entered into a $167,5000 promissory note, dated April 13, 2007 ("promissory note"), to agree to make 24 monthly payments of $6,980 to Southwest Pipe.[5] The promissory note states: "This Note is executed in Kern County, California and proper venue for any arbitration or litigation arising out of the same shall be in Kern County, California, only." As of the filing of this action, a $111,660 balance remained on the promissory note. Cal Pipe claims that it invested $125,000 to incorporate the conveyor equipment into its modified pipe cleaning machine which is located in Bakersfield.

Attached to the consent is a "Mutual General Release" which includes a choice of venue provision:

> In the event any action, suit, or other proceedings is instituted to remedy, prevent or obtain relief from a breach of the Agreement, proper venue for any such arbitration or litigation shall be Kern County, California, only, and the parties waive any right to change of venue.

By Mr. Briers, S.W. Pipe Holdings signed an acknowledgment and agreement to the consent and its attachments, including the promissory note and mutual general release.

### Mr. Ingrum's Texas Fraudulent Transfer Action

Since November 2006, Mr. Ingrum has pursued a Harris County, Texas action entitled "*R.P. Ingrum v. Briers Pipe Services, Corp., et al.*" to allege that Briers Pipe fraudulently transferred scrap pipe and the conveyor equipment at issue here to Mr. Briers, Ray Briers, Southwest Pipe and/or T&R Pipe and that some or all of the defendants conspired with Briers Pipe to avoid paying Mr. Ingrum's default judgment against Briers Pipe. Mr. Ingrum's pursues his fraudulent transfer claims as a judgment creditor of Briers Pipe in connection with the default judgment against Briers Pipe in the Uvalde County, Texas action and pursuant to a breach of contract claim against Briers Pipe stemming from failure to pay a 2000-2001 hunting license.

The Briers defendants note that in January 2008, Mr. Ingrum's counsel allegedly threatened to pursue claims against Cal Pipe for payments made on the conveyor equipment which Mr. Briers/S.W.

---

[5] Confusion arises in that the promissory note is payable to Southwest Pipe although the consent reflects that S.W. Pipe Holdings is the seller of the subject conveyor equipment. In addition, the other portion of the purchase price was title to $15,250 of segregated pipe.

Pipe Holdings transferred to Cal Pipe. The Briers defendants further contend that in response to the threat, Cal Pipe discontinued to pay Mr. Briers/S.W. Pipe Holdings on the promissory note and filed this action to attempt to interplead potential payments to Mr. Ingrum to address his fraudulent transfer and/or default judgment claims. The Briers defendants attribute Mr. Ingrum to contend that payments made to Mr. Briers/S.W. Pipe Holdings should be used be used to satisfy a potential judgment against Southwest Pipe and/or Mr. Briers arising from the default judgment against Briers Pipe in the Uvalde County, Texas action. The Briers defendants contend that disputes as to the correct owner and title of the conveyor equipment at issue here and to whom payments should be made will be determined in Mr. Ingrum's fraudulent transfer action in Harris County, Texas.

Mr. Ingrum contends that he did not learn of Cal Pipe's relationship with the conveyor equipment, Mr. Briers and Southwest Pipe until Mr. Brier's January 8, 2008 deposition. Mr. Ingrum claims that he offered to release Cal Pipe from liability for the conveyor equipment's value if Cal Pipe interplead promissory note payments into Mr. Ingrum's pending Harris County, Texas fraudulent transfer action.

### Cal Pipe's Claims

On February 15, 2008, Cal Pipe filed this action to allege declaratory relief and interpleader claims. Cal Pipe alleges that it relied on Mr. Briers' assertions that he sold the conveyor equipment "free of any liens" and that Mr. Briers "may not have held clear title to the conveyor equipment, and that other parties, each adverse to the other, may have an interest in the subject property." Cal Pipe seeks this Court's declaratory relief that:

1. The consent is valid;
2. Cal Pipe is a "good faith purchaser for value, free of any wrongdoing toward any claimants"; and
3. Cal Pipe is discharged from liability of the claims of any defendant provided that Cal Pipe may make monthly promissory note payments to the Court or a party designated by the Court.

To that end, Cal Pipe seeks to continue to interplead into this Court its monthly payments and to restrain proceedings against Cal Pipe to recover "amounts due and payable under the note."

**The Briers Defendants' Motion To Dismiss**

The Briers defendants filed June 6, 2008 papers to dismiss this action on grounds that this Court lacks federal question or diversity jurisdiction and personal jurisdiction over the Briers defendants. Cal Pipe opposed the motion to dismiss and contended that section 1335, the interpleader statute, and the promissory note's forum selection clause invoked this Court's jurisdiction over Cal Pipe's claims and the Briers defendants. This Court's July 8, 2008 order denied dismissal of this action against the Briers defendants on grounds that:

1. The Briers defendants failed to challenge meaningfully this Court's jurisdiction under section 1335;

2. The promissory note and consent's forum selection clauses indicated the Briers defendants' intent to litigate in California to support exercise of personal jurisdiction over them; and

3. The Briers defendants had sufficient minimum contacts with California for this Court's exercise of personal jurisdiction over them.

**Status Of This Action**

The Briers defendants and Mr. Ingrum are the only defendants who have appeared in this action. The clerk has entered default against Briers Pipe, which takes the position that the funds at issue belong to Mr. Ingrum or Mr. Waldon, the trustee of Mr. Briers bankruptcy. Mr. Waldon accepted service of the summons and complaint on September 30, 2008 but has not appeared.

The Briers defendants seek reconsideration of denial of their dismissal, and this Court will address such reconsideration in a separate order. As discussed below, Mr. Ingrum seeks dismissal in the absence of subject matter and personal jurisdiction.

**DISCUSSION**

**Subject Matter Jurisdiction**

*F.R.Civ.P. 12(b)(1) Motion Standards*

F.R.Civ.P. 12(b)(1) authorizes a motion to dismiss for lack of subject matter jurisdiction. Fundamentally, federal courts are of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 341 (1994). "A federal court is presumed to lack jurisdiction in a particular case

unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Limits on federal jurisdiction must be neither disregarded nor evaded. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396 (1978). After a party challenges subject matter jurisdiction, the non-moving party bears the burden to establish that subject matter jurisdiction exists. *Kokkonen*, 511 U.S. at 377, 98 S.Ct. 2396.

### *The Interpleader Statute*

Mr. Ingrum's initial attack is that this Court lacks subject matter jurisdiction under the section 1335, the interpleader statute, in the absence of adverse and diverse claimants to Cal Pipe's stake. Section 1335 provides in pertinent part:

> (a) The district courts shall have original jurisdiction of any civil action of interpleader . . . filed by any person, firm, or corporation . . . having in his custody or possession money or property of value of $500 or more, or having issued a note . . . of value or amount of $500 or more, or providing for the delivery or payment . . . of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
>
> (1) Two or more **adverse claimants, of diverse citizenship** . . . are claiming or may claim to be entitled to such money or property . . .; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court . . . conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy. (Bold added.)

Section 1335 requires "a fund greater than $500; adverse claimants of diverse citizenship; a deposit of the fund in court; and a disinterested stakeholder." *Mendez v. Teachers Ins. & Annuity Ass'n*, 982 F.2d 783, 787 (2nd 1992). A "basic jurisdictional requirement of a statutory interpleader action is that there be 'adverse claimants' to a particular fund." *Libby, McNeill & Libby v. City Nat'l Bank*, 592 F.2d 504, 507 (9th Cir. 1978).

### *Diverse Claimants*

Mr. Ingrum challenges the diversity of claimants. Section 1335 "requires that two or more of the adverse claimants of the interpleaded funds be 'of diverse citizenship.'" *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1382 (1998); *see State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199 (1967) (section 1335 "has been uniformly construed to

require . . . diversity of citizenship between two or more claimants.") Mr. Ingrum notes that Cal Pipe is not a claimant in the promissory note's proceeds.

Cal Pipe claims that Southwest Pipe and S.W. Pipe Holdings' corporate "residence" can be deemed California based on the forum selection clauses of the promissory note and consent and this Court's exercise of personal jurisdiction over Southwest Pipe and S.W. Pipe Holdings given their minimum contacts with California. Citing to a corporate venue statute and an unpublished decision, Cal Pipe argues that Southwest Pipe and S.W. Pipe Holdings's presence in California renders them diverse from Mr. Ingrum to satisfy section 1335 minimal diversity. Although novel, such notion is unsupported.

Cal Pipe's complaint names as defendants or adverse claimants only Texas citizens. The face of the complaint demonstrates a lack of requisite minimal diversity under section 1335 and thus fails to invoke this Court's jurisdiction under section 1335.

### *Interested Stakeholder*

Cal Pipe argues that as an "interested stakeholder," its California citizenship satisfies section 1335's minimal diversity. Cal Pipe points to a federal treatise that advocates that a citizenship of an interested stakeholder in the "real controversy" "arguably should be considered." Cal Pipe asserts that it is an interested stakeholder given that it "owns legal title" to the conveyor equipment at issue and "has superior title to all others as a result of its status as a bona fide purchaser for value." Cal Pipe argues that if the conveyor equipment was fraudulently transferred, Mr. Ingrum may hold an "equitable lien" in it. Cal Pipe alternatively argues that if the conveyor equipment belonged to Mr. Briers at the time of his bankruptcy, the conveyor equipment is property of his bankruptcy estate. Cal Pipe concludes that it is "unconcerned" with the interplead funds in that it "will assert vehemently its rights to the machine clear of any encumbrances to title, and as the machine is the actual stake in interpleader, it is hardly disinterested."

Mr. Ingrum asks this Court to reject argument that Cal Pipe's stakeholder interest in the conveyor equipment qualifies Cal Pipe as a claimant to satisfy section 1335's minimal diversity. Mr. Ingrum points out that a plaintiff is unable to interplead multiple stakes to meet the requirement of adverse and diverse claimants. The "key prerequisite" for an interpleader action is "two or more claimants to the fund who are 'adverse' to each other." *New Jersey Sports Productions, Inc. v. Don King Productions,*

8

*Inc.*, 15 F.Supp.2d 534, 539 (D. N.J. 1998). "This requirement is not met where one of the claims clearly is devoid of substance, or one of the claimants is under the control of the stakeholder or has dropped his claim and the fear of multiple litigation or liability is groundless, or the claims are not asserted against the same fund . . . ." *New Jersey Sports Productions*, 15 F.Supp.2d at 539.

"Similarly, to properly invoke the interpleader jurisdiction of the Court, there must exist a limited fund or some specific, identifiable property as to which the claimants and stakeholder need the protection of one lawsuit." *New Jersey Sports Productions*, 15 F.Supp.2d at 539. A "single, identifiable fund is a prerequisite to an interpleader action." *Wausau Ins. Cos. v Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992) (citing *Tashire*, 386 U.S. at 530, 87 S.Ct. 1199 (legislative purpose was "to remedy the problems posed by multiple claimants to a single fund")); *see Matter of Bohart*, 743 F.2d 313, 324 (5th Cir.1984) ("An interpleader action is designed to protect a stakeholder, as such, from the possibility of multiple claims upon a single fund"); *Gaines v. Sunray Oil Company*, 539 F.2d 1136, 1141 (8th Cir.1976) ("Requisite to the maintenance of an interpleader action is that the stakeholder be subject to multiple adverse claims against a single fund or liability"); *Metropolitan Life Ins. Co. v. O'Ferrall Ochart*, 635 F.Supp. 119, 120 (D.P.R.1986) ("A specific, identifiable property or fund must be involved").

Mr. Ingrum further notes that Cal Pipe is unable to demonstrate another claimant to the conveyor equipment in that none of the defendants who have appeared (Briers defendants and Mr. Ingrum) make a claim to the conveyor equipment. Mr. Ingrum points out that in the absence of a lien or security interest as a part of the promissory note, the only available claim is the unpaid portion of the promissory note. Mr. Ingrum specifically disclaims an interest in the conveyor equipment.

Mr. Ingrum points out that section 1335's purpose is not met here. Section 1335's is "intended to afford a remedy in situations where interpleader had theretofore been unavailable because of the impossibility of haling before a court claimants residing beyond its territorial jurisdiction." *Security Trust & Savings Bank of San Diego v. Walsh,* 91 F.2d 481, 483 (9th Cir. 1937). Section 1335 is not to be used "for forum shopping, which is the use to which it seems to have been put here; and when an interpleader action is brought in bad faith it must be dismissed." *Indianapolis Colts v. Mayor and City Council of Baltimore,* 733 F.2d 484, 487-488 (7th Cir. 1984). Mr. Ingrum concludes that consideration

9

of an interested stakeholder as a claimant for diversity purposes "sanctions the use of the statute for mere forum-shopping, which was never its intended purpose." *American Family Mut. Ins. Co. v. Roche,* 830 F.Supp. 1241, 1249 (E.D. Wis. 1993).

Mr. Ingrum is correct that Cal Pipe's citizenship is "irrelevant" for section 1335 diversity. Cal Pipe points to no pertinent legal authority that its interest in the conveyor equipment renders it an interested stakeholder for consideration of its citizenship under section 1335, especially given that no defendant claims an interest in the conveyor equipment. The stake at issue is the promissory note proceeds, which gave rise to this action. The conveyor equipment is not the source of Cal Pipe's claims in this action. This Court understands Cal Pipe's desire to litigate in California and avoid multiple Texas litigation. Nonetheless, this Court but will not manipulate section 1335 for forum shopping. In the absence of diverse and adverse claimants, this Court lacks subject matter jurisdiction for Cal Pipe's section 1335 interpleader claim.

### *Federal Question Jurisdiction*

Perhaps recognizing the weakness of its section 1335 arguments, Cal Pipe asserts grounds of federal question jurisdiction to attempt to invoke interpleader under F.R.Civ.P. 22, which establishes an interpleader remedy separate from section 1335:

> In addition to section 1335, Fed.R.Civ.P. 22 provides for interpleader actions in the federal courts. Rule 22, however, is merely a procedural device; it confers no jurisdiction on the federal courts. . . Accordingly, an interpleader action under Rule 22 must fall within some statutory grant of jurisdiction.

*Morongo Band*, 858 F.2d at 1382; *see Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 488 (jurisdiction for a F.R.Civ.P. 22 interpleader action "must arise from a federal statute" – diversity or federal question).

As discussed below, Cal Pipe appears to concede this Court's lack of personal jurisdiction over Mr. Ingrum to invoke diversity jurisdiction. Cal Pipe points to Mr. Briers' bankruptcy and the conveyor equipment's California location and in rem characterization to attempt to invoke federal question jurisdiction. Cal Pipe fails to substantiate its claims for federal question jurisdiction. And, even if such grounds were viable, only half of the jurisdiction battle would be won as to Mr. Ingrum in that Cal Pipe would need to satisfy personal jurisdiction requirements.

**Personal Jurisdiction**

F.R.Civ.P. 12(b)(2) empowers a defendant to challenge a complaint "for lack of personal jurisdiction." A district court's determination whether to exercise personal jurisdiction is a question of law. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Although the defendant is the moving party on a F.R.Civ.P. 12(b)(2) motion to dismiss, "the plaintiff bears the burden of establishing that jurisdiction." *Rio Properties*, 284 F.3d at 1019.

Two recognized bases exist for personal jurisdiction over nonresident defendants: (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the person in all matters; and (2) "specific" or "limited" jurisdiction which arises out of the defendant's contacts with the forum giving rise to the subject of the litigation. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984). Absent a traditional basis for jurisdiction (presence, domicile or consent), due process requires that the defendant have "certain minimum contacts with (the forum state) such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). A plaintiff has the burden to make a prima facie showing of a court's personal jurisdiction over a defendant. *See Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Mr. Ingrum points to the absence of facts and, in turn Cal Pipe's inability, to establish personal jurisdiction over Mr. Ingrum. Mr. Ingrum notes that there is no basis to assert general jurisdiction over him and that he was not part of a contract or transaction with Cal Pipe or the Briers defendants. According to Mr. Ingrum, the sole basis to assert personal jurisdiction over him is 28 U.S.C. § 2361[6] which is inapplicable in the absence of satisfaction of section 1335 requirements. Mr. Ingrum continues

---

[6] 28 U.S.C. § 2361 addresses service of process in section 1335 actions and provides in pertinent part:

In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court. . . .

Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment.

that in the absence of section 1335 subject matter jurisdiction, Cal Pipe lacks a basis to assert 28 U.S.C. § 1367 supplemental jurisdiction for its declaratory relief and F.R.Civ.P. 22 interpleader claims.

Again, Mr. Ingrum is correct. Nothing before this Court suggests that it can exercise personal jurisdiction over Mr. Ingrum. Cal Pipe does not challenge to Mr. Ingrum's lack of sufficient California contacts to exercise personal jurisdiction over Mr. Ingrum.

In a last gasp effort, Cal Pipe asserts that the consent and promissory note's forum selection clauses invoke personal jurisdiction over Mr. Ingrum. Cal Pipe's own authorities note that such clauses will be enforced if they appear "in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." There is no evidence that Mr. Ingrum is a party to a contract with Cal Pipe let alone a contract with a forum selection clause.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES this action against defendant Robert P. Ingrum in the absence of grounds to invoke subject matter and personal jurisdiction for California Pipe Recycling, Inc.'s claims against him; and

2. DIRECTS the clerk to enter judgment in favor of defendant Robert P. Ingrum and against California Pipe Recycling, Inc.

This Court will proceed with the October 29, 2008 status conference at which Cal Pipe shall be prepared to discuss whether in light of this order: (1) Cal Pipe intends to continue to pursue its claims in this action or in a Texas action; and (2) Mr. Waldon will appear in this action and contest jurisdiction.

IT IS SO ORDERED.

**Dated:   October 23, 2008**           /s/ Lawrence J. O'Neill
                                        UNITED STATES DISTRICT JUDGE